IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PUERTO RICO TELEPHONE COMPANY,
INC.; PUERTO RICO TELEPHONE
COMPANY BENEFITS COMMITTEE;
PUERTO RICO TELEPHONE COMPANY
FUND ADMINISTRATION COMMITTEE;
PRTC PENSION PLAN FOR HOURLY
EMPLOYEES; RETIREMENT PLAN FOR
SALARIED EMPLOYEES OF PRTC; and
PRTC LUMP SUM RETIREMENT PLAN

Plaintiffs/Counter-Defendants

vs                                                        CIVIL 09-1085CCC

SISTEMA DE RETIRO DE LOS
EMPLEADOS DEL GOBIERNO Y LA
JUDICATURA; ADMINISTRADOR DE LOS
SISTEMAS DE RETIRO DEL GOBIERNO Y
LA JUDICATURA

Defendants

vs

MARIA M. RIVERA; RICARDO GUERRERO;
ARNALDO DIAZ; CARMEN I. RODRIGUEZ;
CARMEN M. CRUZ; JOSE J. GONZALEZ;
IRIS M. IRLANDA; CYNTHIA BURGOS;
HECTOR MORALES; JOSE RIVERA;
ANTONIO JORGE RODRIGUEZ; JOSE H.
DELGADO; SANDRA LOPEZ; RAFAEL
ZAYAS; NICOLASA FIGUEROA; MIGUEL
APONTE; RICARDO GUZMAN; EDWIN
ORTIZ; JOSE W. CALVO; and GLADYS
FIGUEROA

Intervenors/Counter-Claimants

**OPINION AND ORDER:
STATEMENT OF REASONS**

## I.       INTRODUCTION

Plaintiffs Puerto Rico Telephone Company ("PRTC"), the Puerto Rico Telephone

Company Pension Plan for Hourly Employees (the "Hourly Pension Plan"), the Retirement

Plan for salaried Employees of Puerto Rico Telephone Company (the "Salaried Retirement

Plan"), the Puerto Rico Telephone Company Lump Sum Retirement Plan (the "Lump Sum

CIVIL 09-1085CCC                           2

Plan"), the Puerto Rico Telephone Company Fund Administration Committee (the "Fund Administration Committee"), and the Puerto Rico Telephone Company Benefits Committee (the "Benefits Committee") filed this lawsuit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001, *et seq.*, against defendants Sistema de Retiro de los Empleados del Gobierno (Commonwealth's Retirement System") and the Administrador de los Sistemas de Retiro de los Empleados del Gobierno y la Judicatura (collectively, "Defendants"). Plaintiffs seek a judgment declaring that Puerto Rico Act No. 234 of August 9, 2008 ("Act 234") (3 L.P.R.A. § 764(i)) is expressly preempted by federal law because, as enacted and/or as it is being applied to them, since it violates the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1002 et seq.

They allege that Act 234 and/or its interpretation and enforcement by defendants requires several pension plans established and maintained by PRTC, i.e. co-plaintiffs the Hourly Pension Plan, the Salaried Retirement Plan and the Lump Sum Plan (collectively, the "Retirement Plans"), to transfer to the Commonwealth's Retirement System, a governmental plan exempted from ERISA, the entire amount of pension benefits accrued by the employees identified in Act 234. These employees, whom we will refer to as Eligible Employees and some of whom are Intervenors in this action, are PRTC active and retired employees that, at the time of the sale by the Commonwealth of its controlling interest in PRTC to a private corporation in March of 1999, were participants in the Commonwealth's Retirement System. Act 234 was enacted to allow Eligible Employees to return to the Commonwealth's Retirement System and gives them the right to have such Retirement System count the years of service worked at PRTC after the sale of the Commonwealth's controlling interest as years of service for purposes of accruing pension benefits that would entitle them to a "merit pension" benefit under the Commonwealth's Retirement System.

CIVIL 09-1085CCC                              3

However, Act 234 requires that, in order for Eligible Employees to be able to return to the Commonwealth's Retirement System, they first have to (1) pay to the Retirement System the total principal amount of employee contributions for each year of service worked after the sale; and (2) pay the accumulated interest on the principal amount of employee contributions for each year of service worked after the sale that will be counted as years of service for purposes of qualifying for a merit pension benefit under the Commonwealth's Retirement System. The Act further provides that Eligible Employees will be entitled to a payment plan to pay the principal amount of the contributions, plus interest.  In order for an Eligible Employee to be eligible for the payment plan, the statute requires that he pay what he owes of the principal and interest of the contributions "*after the Retirement Plan of the PRTC returns to the Retirement System the contributions it has of each" Eligible Employee.*" Plaintiffs contend that Act 234 requires the Retirement Plans, all of which are private pension plans subject to ERISA, to make a transfer of plan assets to the Commonwealth's Retirement System in violation of ERISA.  It is to this extent that Plaintiffs request a declaration that ERISA preempts Act 234.

Plaintiffs filed a Motion for Summary Judgment on July 10, 2012 seeking a finding that ERISA preempts Act 234 and requesting that a declaratory judgment be entered in their favor (**docket entry 101**).  On July 12, 2012 defendants also filed a Motion for Summary Judgment raising their own arguments in support of determining that ERISA preempts Act 234, for the same reasons set forth by PRTC (**docket entry 105**). Both motions were opposed on September 4, 2012 by the Intervening Defendants (the "Interveners"), a group of former and current PRTC employees who qualify as Eligible Employees under Act 234, (docket entry 110).  Interveners' position is that ERISA does not preempt Act 234 because it neither regulates the Retirement Plans nor imposes requirements on them.  They also claim that under Section 208 of ERISA, 29 U.S.C. § 1058, the transfer of plan assets that Act 234 requires the Retirement Plans to make to the Commonwealth's Retirement System

CIVIL 09-1085CCC                                    4

"would be perfectly valid" which, they submit, does not create a "preemption problem" (docket entry 110, p. 9).

The Court finds that ERISA preempts Act 234, as enacted and as it applies to Plaintiffs, and GRANTS the Motions for Summary Judgment filed by plaintiffs (**docket entry 101**) and defendants (**docket entry 105**).

## II.    UNCONTESTED FACTS

On June 19, 2012 and June 27, 2012, the parties jointly informed at Docket Nos. 98 and 99 that they had stipulated the following facts which the Court deems to be undisputed:

1.    The Puerto Rico Telephone Company ("PRTC") is a telecommunications corporation organized and existing under the laws of Puerto Rico with its principal place of business in Guaynabo, Puerto Rico.

2.    PRTC sponsors pension plans for the benefit of its employees, which include: "Puerto Rico Telephone Company Pension Plan for Hourly Employees"; "Retirement Plan for Salaried Employees of Puerto Rico Telephone Company" and "Puerto Rico Telephone Company Lump Sum Retirement Plan." PRTC also sponsors the "Puerto Rico Telephone Company Supplemental Executive Retirement Plan" for the benefit of a select group of management or highly compensated employees."

3.    The "Puerto Rico Telephone Company Pension Plan for Hourly Employees" and the "Retirement Plan for Salaried Employees of Puerto Rico Telephone Company" are subject to ERISA and to the provisions of the Internal Revenue Code of the United States that apply to retirement plans. The "Puerto Rico Telephone Company Lump Sum Retirement Plan" is subject to ERISA.

4.    The Puerto Rico Telephone Company Benefits Committee is the Plan Administrator and a fiduciary of the Retirement Plans.

CIVIL 09-1085CCC                                    5

5.    The Puerto Rico Telephone Company Fund Administration Committee is a fiduciary of the Retirement Plans and is in charge of administrating the Retirement Plans' Funds.

6.    The Puerto Rico Telephone Company Pension Plan for Hourly Employees is a defined benefit pension plan that provides retirement benefits to PRTC's eligible hourly employees.

7.    The Retirement Plan for Salaried Employees of Puerto Rico Telephone Company is a defined benefit pension plan that provides retirement benefits to PRTC's eligible salaried employees.

8.    The Puerto Rico Telephone Company Lump Sum Retirement Plan is a retirement plan that provides lump sum retirement benefits to PRTC's eligible employees.

9.    The Board of Trustees of the Sistema de Retiro de los Empleados del Gobierno appoints an Administrator of the Commonwealth's Retirement System. The Administrator of the Commonwealth's Retirement System directs and supervises all the administrative and technical activities of the Commonwealth's Retirement System.

10.    From 1974 until 1999, the Puerto Rico Telephone Company, Inc. was a corporation whose stock was owned by the Telephone Authority of the Commonwealth of Puerto Rico, a public corporation and instrumentality of the Commonwealth of Puerto Rico.

11.    On or about May 5, 1994, the Communications Corporation of Puerto Rico ("CCPR") merged with the Puerto Rico Telephone Company and the latter was the surviving company. As a result, persons that worked for CCPR became employees of PRTC from that date onward.

12.    Prior to the 1994 merger between CCPR and the Puerto Rico Telephone Company, the employees of CCPR participated in the Commonwealth's Retirement System.

CIVIL 09-1085CCC                                    6

13.     Before the effective date of the merger, the employees of CCPR were consulted if they wished to continue participating in the Commonwealth's Retirement System or if they would rather begin to participate in any of the PRTC Retirement Plans.

14.     Many of the CCPR employees decided to continue participating in the Commonwealth's Retirement System. As a result, they were allowed to continue participating in the Commonwealth's Retirement System and did not participate in any of the PRTC Retirement Plans as did all of the other PRTC employees.

15.     These former CCPR employees continued to make the salary contributions to the Commonwealth's Retirement System required by Puerto Rico Law 447 of May 15, 1951, as amended, and PRTC began to make on their behalf the employer contributions to the Commonwealth's Retirement System.

16.     In March of 1999, the Telephone Authority sold a controlling interest of PRTC to GTE Holdings (Puerto Rico) LLC and GTE International Telecommunications Incorporated ("GTE").

17.     At the time of the sale to the GTE, approximately 512 PRTC active employees were participating and had accrued benefits under the Commonwealth's Retirement System. These employees had accrued those benefits while they worked at CCPR prior to working for PRTC or while they worked at PRTC but prior to the sale to the GTE.

18.     Prior to the sale to the GTE, PRTC employees who participated in the Commonwealth's Retirement System did not participate in the PRTC-sponsored plans.

19.     As part of the Stock Purchase Agreement with the GTE, the Telephone Authority and GTE agreed that these 512 employees would participate in one of two retirement plans sponsored by the PRTC. These plans were identified in the Agreement as "Replacement Plans" and consisted of the "Puerto Rico Telephone Company Pension Plan for Hourly Employees" and the "Retirement Plan for Salaried Employees of Puerto Rico Telephone Company."

CIVIL 09-1085CCC                                    7

20.    The Stock Purchase Agreement provided in Clause 9.01(a) that "the Retirement System will remain solely liable for and responsible for the payment of all benefits of Retirement System participants under the Retirement System . . . No assets will be transferred from the affiliated group to the Retirement System to pay any such liabilities."

21.    On August 9, 2008, Act 234 was signed into law.

22.    Act 234 grants PRTC active and retired employees who, at the time of the sale of a controlling interest of PRTC in March of 1999, were participants in the Commonwealth's Retirement System (hereinafter "Eligible Employees"), the right to have the Retirement System count the years of service worked after the sale with any Government branch, including PRTC, Verizon and Claro, as years of service for purposes of accruing pension benefits that would entitle them to a "merit pension" benefit ("*pension de mérito*") under the Commonwealth's Retirement System. For those employees that have already retired under the Retirement System, Act 234 grants them the opportunity to obtain a new calculation of their pension benefits or an adjustment to the same.

23.    To take advantage of the opportunity that Act 234 provides, the Eligible Employees must: (1) return to the Commonwealth's Retirement System all the contributions that were distributed to them, if any, after they ceased to participate in the Commonwealth's Retirement System; (2) pay the accumulated interest on the amount of contributions previously distributed; (3) pay the total principal amount of employee contributions for each year of service worked after the sale with any Government branch, including PRTC, Verizon and Claro; and (4) pay the accumulated interest on the principal amount of employee contributions for each year of service worked after the sale that will be counted as years of service for purposes of qualifying for a merit pension benefit under the Retirement System. Act 234 provides that the annual interest rate will not be higher than 2.5 percent.

24.    Act 234 provides that Eligible Employees will be entitled to a payment plan to pay the principal amount and interests owed to the Retirement System.

CIVIL 09-1085CCC                                    8

25.     In order for an Eligible Employee to be eligible for a payment plan, Act 234 states that he or she must pay what he or she owes of the principal and interest of the contributions "after the Retirement Plan of the PRTC returns to the Retirement System the contributions it has of each Eligible Employee."

26.     The Retirement System Administration promulgated Norms to implement the requirements of Act 234 (the "Norms").  These Norms became effective on December 3, 2008.

27.     The Norms apply to former employees and retirees of the CCPR that, in March of 1999, at the time PRTC was sold, were participants in the Retirement System. In other words, the Norms apply to Eligible Employees.

28.     The Norms provide, among other things, that: (i) the Retirement System's Administrator would send a notice to PRTC requesting PRTC's compliance with Act 234, and that it transfer to the Retirement System the contributions that PRTC's retirement plans have for each of the Eligible Employees; and (ii) that each Eligible Employee must pay the principal of owed contributions in its entirety after PRTC's Retirement Plan sends and pays to the Retirement System the contributions that it has for each Eligible Employee.

29.     On September 24, 2008, Adelina Ramos Meléndez, then Director of the Area of Services to Participants of the Retirement System Administration, sent a letter to PRTC requesting a list of all the Eligible Employees working for PRTC, Verizon or Claro and their salaries. According to the letter, the Retirement System Administration will use this information to determine which actions are necessary so that PRTC can (1) transfer to the Commonwealth's Retirement System the applicable individual and employer contributions these Eligible Employees have accrued under the PRTC retirement plans; and (2) prospectively proceed with monthly deductions from these Eligible Employees' salaries so that they could resume their participation in the Commonwealth's Retirement System.

CIVIL 09-1085CCC                          9

30.    On October 24, 2008, the Retirement System's Administrator, at that time Harold González Rosado, sent a letter to the President of PRTC, Mr. José E. Ortiz de Montellano.  In that letter, Mr. González informed PRTC that Act 234 provides that Eligible Employees must pay the contributions they owe to the Retirement System after the Retirement Plan of PRTC sends and pays to the Retirement System the pension contributions it has for each Eligible Employee. Mr. González also stated in the letter that, pursuant to Act No. 447 of May 15, 1951 once Eligible Employees resumed their participation in the Retirement System, PRTC would have to deduct from Eligible Employees' salaries the amount they will prospectively contribute to the Retirement System, and must pay an additional amount equal to 9.275 percent of each of Eligible Employees' salaries as employer contributions to the Retirement System.

31.    Pursuant to Act 116 of July 6, 2011 the amount of employer contributions PRTC would have to pay to the Retirement System on behalf of Each Eligible Employee would increase every year as follows: between July 1, 2011 to June 30, 2012 the contribution would be 10.275 percent; between July 1, 2012 until June 30, 2016 the contribution would increase, each year, by an additional 1 percent; and from July 1, 2016 until June 30, 2021 the employer contribution in effect on June 30, 2016 would begin to increase by an additional 1.25 percent every year.

32.    Through the Administrator's and Adelina Ramos' letters, defendants informed Plaintiffs that, pursuant to the provisions of Act 234, the Commonwealth Retirement System will request the transfer of the pension contributions held in the Retirement Plans' trusts for Eligible Employees to the Commonwealth Retirement System.

33.    In those letters, defendants also informed PRTC that some of the Eligible Employees have visited the offices of the Retirement System Administration seeking information on steps they need to take to resume their participation in the Retirement System.

CIVIL 09-1085CCC                                            10

34.      Pursuant to the provisions of Act 234 and Defendants' interpretation and/or enforcement of this Act, a group of Eligible Employees has requested plaintiffs to transfer the pension contributions each has accumulated in the Retirement Plans to the Commonwealth's Retirement System. Some of these Eligible Employees threatened to take, and indeed took legal action against Plaintiffs if they failed to process the transfer of pension contributions.

35.      The Retirement Plans are non-contributory defined pension benefit plans. This means that employees that are participants in these Plans do not make any contributions to the same.

36.      PRTC, the employer, is the only entity that makes contributions to the Retirement Plans, and such contributions are held in the Retirement Plans' Trusts. However, contributions are not made on behalf of particular employees. Rather, every year an actuarial analysis is made to determine what amount of money is necessary to keep the Plans funded and in condition to pay the pension benefits accrued by all participants.

37.      The Commonwealth's Retirement System is a governmental plan not subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended.

In addition to the above stipulated facts, Plaintiffs submitted, as required by Local Rule 56(b), a statement of material facts that included other facts not stipulated by the parties, all of which were supported by a record citation (docket entry 101-1). In their Oppositions to Motion for Summary Judgment, and pursuant to Local Rule 56(c), Interveners admitted all of the facts stated in Plaintiffs' statement of material facts (docket entry 110, p. 4, fn. 2), and Defendants did not file an opposition to any of the facts included in Plaintiffs' statement. Therefore, these additional facts are deemed admitted and undisputed:

1.      The Salaried Retirement Plan and the Hourly Pension Plan provide in part that a participant shall be entitled to begin to receive retirement benefits on the participant's Retirement Date.

CIVIL 09-1085CCC                              11

     2.     The Hourly Pension Plan provides that a Participant's Retirement Date is his or her date of actual Retirement which may be his or her Normal, Early, Disability or Postponed Retirement Date.

     3.     The Salaried Retirement Plan provides that a Participant's Retirement Date is his or her date of actual Retirement which may be his or her Normal, Early or Postponed Retirement Date.

     4.     The Salaried Retirement Plan and the Hourly Pension Plan provide that a Participant's Normal Retirement Date "shall be later of (i) the 65th anniversary of his birth or (ii) the fifth anniversary of his Employment Commencement Date."

     5.     The Hourly Pension Plan provides that a Participant "may retire on an Early Retirement Date, which may be the first day of any month coincident with or subsequent to the earliest of the following dates (but in any case prior to his Normal Retirement Date): (A) the 55th anniversary of his birth and his completion of at least ten (10) Years of Service, (B) the 52nd anniversary of his birth and his completion of at least twenty (20) Years of Service, or (C) his completion of at least thirty (30) Years of Service."

     6.     The Salaried Retirement Plan provides that a Participant "may retire on an Early Retirement Date, which may be the first day of any month coincident with or subsequent to the earlier of the following dates (but in any case prior to his Normal Retirement Date): (A) the 55th anniversary of his birth and his completion of at least ten (10) Years of Service, (B) the day when the sum of the Participant's age and Period of Service equal 85."

     7.     The Hourly Pension Plan and the Salaried Retirement Plan provide that: "[i]f a Participant continues in the employ of an Employer beyond his Normal Retirement Date, his Retirement Income shall be deferred. In such case, no Retirement Income shall be payable to such Participant until his Postponed Retirement Date, which shall be the earlier of (i) the first day of the month coincident with or next following the date of his actual

retirement, or (ii) the first day of the month in which his employment ceases to be substantial." Under both Plans employment ceases to be substantial if the Participant works less than 40 Hours of Service on a calendar month.

8.      The Hourly Pension Plan provides that, for disabilities that were incurred before January 18, 2006, a Participant that "becomes Disabled and has completed at least five (5) Years of Service, may retire on the first day of any month subsequent to his having becoming Disables, which shall be his Disability Retirement Date."  For disabilities incurred on or after January 18, 2006, The Hourly Pension Plan provides that "a Participant's Disability Retirement Date shall not occur until a minimum of 180 days have elapsed from the date his absence from work began by reason of his being Disabled."

9.      The Salaried Retirement Plan and the Hourly Pension Plan do not provide for a distribution of retirement benefits to a participant other than the distribution made on the participant's date of actual retirement upon reaching his Normal, Early or Postponed Retirement Date and, in the case of the Hourly Pension Plan also upon reaching his Disability Retirement Date, except for a distribution to a participant that terminated employment prior to his Retirement Date when the total amount of his vested benefit under the Salaried Retirement or Hourly Pension Plans is $3,500 or less.

10.     If a Participant has vested benefits under the Salaried or Hourly Pension Plan and terminated employment with PRTC prior to reaching his Normal, Early, Postponed or, in the case of the Hourly Pension Plan, the Disability Retirement Date, he will be able to receive a distribution of his vested retirement benefits upon reaching Normal Retirement Date or as otherwise provided in Article 5.1 of the Hourly Pension Plan or Article 5.1 of the Salaried Retirement Plan, unless, at the time of termination of employment, he or she has a vested benefit of $3,500 or less, in which case he or she may opt to receive, or in the case of the Salaried Retirement Plan will receive, a lump sum distribution of his vested benefit upon termination of employment.

CIVIL 09-1085CCC                              13

11.     The Lump Sum Plan provides that a participant is entitled to receive a distribution of the benefits he or she has accrued under such Plan when the Participant retires from active service or terminates employment with a vested interest under the Hourly Pension Plan or the Salaried Retirement Plan.

12.     The Lump Sum Plan's terms provide that the distribution of vested Lump Sum benefits will begin upon retirement if the Lump Sum benefit is less than $3,500 or at any time after retirement if the benefit is in excess of $3,500.

13.     For purposes of the Lump Sum Plan, "retirement" means: (i) in the case of employees participating in the Hourly Pension Plan, separation from active service after becoming eligible for Early, Normal or Disability Retirement benefits under the terms of the Hourly Pension Plan; or (ii) in the case of employees participating in the Salaried Retirement Plan, separation from active service after becoming eligible for Early or Normal Retirement benefits under the terms of the Salaried Retirement Plan.

14.     Under the Lump Sum Plan, if the Participant terminates employment with a vested benefit, but prior to being eligible for retirement, he or she will receive a distribution of benefits upon reaching his Early Retirement Date or Later.


III.    **ANALYSIS OF RELEVANT FACTS AND ISSUES OF LAW**

        A.      **ERISA preemption:**

        The Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 101 *et seq*., was originally enacted into law in September of 1974.  The purpose of this Act was, and still is, to promote and protect the best interests of the employees and their beneficiaries in the benefit plans established by their employers. Shaw v. Delta Air Lines, Inc., 463 U.S. 85,

90 (1983).  Since ERISA's enactment, all benefit retirement and welfare benefit plans established by a private employer are solely and exclusively subject to the provisions of this Act. Shaw v. Delta Air Lines, Inc., *supra*, at pp. 90-91. Section 3(3) of ERISA, 29 U.S.C. § 1002(3).

Congress' primary intention in enacting ERISA was to subject all benefit plans to federal regulation, to the exclusion of state law. Thus, ERISA establishes several standards and uniform rules to regulate all benefit plans established in the United States, including Puerto Rico. To this effect, the U.S. Supreme Court, in Shaw v. Delta Air Lines, Inc., *supra*, stated:

> The federal Employee Retirement Income Security Act of 1974 (ERISA), 88 Stat. 829, as amended, 29 U.S.C. 1001 et seq. . . ., subjects to federal regulation plans providing employees with fringe benefits.  ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans. . . .  The term "employee benefit plan" is defined as including both pension plans and welfare plans.  The statute imposes participation, funding, and vesting requirements on pension plans. It also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for both pension and welfare plans . . .

Shaw v. Delta Air Lines, Inc., *supra*, pp. 90-91.  (Emphasis supplied).

Congress' intention in establishing, through ERISA, a set of uniform federal rules that would govern all matters related to benefit plans deserves to be underscored. In order to achieve such uniformity, Congress had to free benefit plans of having to comply or be subject to state laws or other state regulation. Thus, Congress included a broad provision that, with very few exceptions identified in ERISA, preempts every state law that *directly or indirectly* relates to an employee benefit plan.  This provision provides as follows:

> . . . the provisions of this subchapter and subchapter III of this chapter **shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan** described in section 1003(a) . . .

Section 514(a) of  ERISA, 29 U.S.C. section 1144(a).  (Emphasis supplied).

The term "State laws", as used in this ERISA section includes all laws, decisions, rules, regulations or other State action having the effect of law, of any State.

Section 514(c)(1) of ERISA, 29 U.S.C. § 1144(c)(1).  In turn, the terms "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans . . ." Section 514(c)(2) of ERISA, 29 U.S.C. § 1144(c)(2).  For purposes of ERISA, the term "State" includes Puerto Rico.  Section 3(10) of ERISA, 29 U.S.C. § 1002(10).  See also Rosario Cordero v. Crowley Towing, 46 F.3d 120 (1st Cir. 1995).

By including Section 514(a) within the ERISA framework, Congress was able to require and permanently maintain uniformity in the rules that govern all employee benefit plans.  The Supreme Court of the United States expressed and underscored that Section 514(a) of ERISA was included to:

> ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and Federal Government. Otherwise, the inefficiencies created could work to the detriment of plan beneficiaries. . . . Particularly disruptive is the potential for conflict in substantive law.

Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990).  (Emphasis supplied).

ERISA's preemption of state laws that relate to employee benefit plans is not limited to those state laws that directly and specifically affect benefit plans, but also those state laws that affect them only indirectly, even when the state laws are of general application. Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987).  Section 514(a) of ERISA even displaces those state laws whose requirements are consistent with ERISA's requirements. Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 725 (1985).  Consequently, if a state law relates to a benefit plan, such law is preempted and displaced by ERISA.

To determine whether a state law "relates to" an ERISA-covered benefit plan for purposes of Section 514(a) of ERISA, the Supreme Court of the United States designed a two-part inquiry.  California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc., 519 U.S. 316 (1997).  A state law "relates to" a benefit plan, and is therefore preempted, if it (1) has a connection with **or** (2) reference to such a plan.  Shaw

CIVIL 09-1085CCC                                        16

v. Delta Air Lines, Inc., *supra*, at pp. 96-97; Dillingham, 519 U.S. at 324; Greater Washington Bd. of Trade, 506 U.S. 125, 130-131 (1992); see also Pharmaceutical Care Management Association v. Rowe, 429 F.3d 294 (1st Cir. 2005).  A "state law that comes within the compass of either branch of the test is subject to preemption."  Carpenters Local Union No. 26, *supra*, at 140.

To determine whether a state law has a connection to an ERISA plan, courts have to look to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans."  Dillingham, 519 U.S. at 325 (citing New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 658-659 (1995)) (Emphasis supplied).

(a)      *"Reference to" Prong:*

Under the "reference to" inquiry, the Supreme Court of the United States has "held pre-empted laws that imposed requirements by reference to [ERISA] covered programs…" Dillingham, 519 U.S. at 324 (citing Greater Washington Bd., 506 U.S. at 130-131) (Emphasis supplied). It has also held preempted laws that specifically exempted ERISA plans from an otherwise generally applicable state law and common-law causes of action premised on the existence of an ERISA Plan.  Dillingham, 519 U.S. at 324.  Furthermore, "[w]here a State's law acts immediately and exclusively upon ERISA plans… or where the existence of ERISA plans is essential to the law's operation, that "reference" will result in pre-emption."  Dillingham, 519 U.S. at 325.

The U.S. Court of Appeals for the First Circuit interpreted the holding in *Dillingham*, with respect to the "reference to" inquiry, as follows:

> . . . *Dillingham* makes clear that two types of state laws – those that impose requirements by reference to ERISA plans and those that specifically exempt ERISA plans from otherwise generally applicable provisions – as well as state causes of action that are predicated on the existence of ERISA plans all refer to, and thus relate to, ERISA plans for purposes of 29 U.S.C. § 1144(a) . . . Put another way, . . . the "reference to" inquiry will result in preemption 'where

CIVIL 09-1085CCC                    17

> a State's law acts immediately and exclusively upon ERISA plans…or where the existence of ERISA plans is essential to the law's operations.

Carpenters Local Union No. 26, United Brotherhood of Carpenters & Joiners of America v. United States Fidelity & Guaranty Co., 215 F.3d 136, 143 (1st Cir. 2000) (citations omitted).

Act 234 requires PRTC's Retirement Plans to transfer to The Commonwealth's Retirement System the entire amount of pension benefits accrued by Eligible Employees identified in Act 234. Article 1 of Act 234, *supra*. The Act specifically refers to, and directly and exclusively acts upon PRTC's Retirement Plans when it states that an Eligible Employee must pay what he or she owes of the principal and interest of the contributions "…after the Retirement Plan of the PRTC returns to the Commonwealth's Retirement System the contributions it has" of each Eligible Employee.  Article 1 of Act 234, *supra*.

Also, the Administrator of Puerto Rico's Commonwealth's Retirement System's interpretation of the Act, as reflected in the Norms promulgated by the Commonwealth's Retirement System Administration to implement Act 234's requirements, leave no doubt that Act 234 requires and orders PRTC's Retirement Plans to return to the Commonwealth's Retirement System the mentioned accrued pension benefits, therefore necessitating a disbursement of the Retirement Plans' assets to the Commonwealth's Retirement System. Such Norms provide in part that the Commonwealth's Retirement System's Administrator would send a notice to PRTC requesting PRTC's compliance with Act 234, and that it transfer to the Commonwealth's Retirement System the contributions that PRTC's Retirement Plans have for each of the Eligible Employees. The Norms further provide that Eligible Employees would have to pay the principal of owed contributions after PRTC's Retirement Plans **send and pay** to the Commonwealth's Retirement System the contributions it has for each Eligible Employee.

Clearly, Act 234 directly relates to ERISA-governed pension benefit plans as it specifically refers to PRTC's ERISA-covered Retirement Plans, **and requires and orders**

**them** to make a transfer of plan assets to the Commonwealth's Retirement System (i.e. a transfer of the contributions that PRTC's Retirement Plans have for each Eligible Employee). As such, Act No. 234 acts immediately and exclusively upon the Retirement Plans and, for that reason, is preempted by ERISA.

Act 234 is also preempted under the "reference to" prong because the existence of the Retirement Plans is also essential to Act 234's operations. To be able to return to participate in the Commonwealth's Retirement System, an Eligible Employee has to pay to the Commonwealth's Retirement System what he owes in contributions (principal and interest). In order to assist Eligible Employees in the payment of owed contributions, Act 234 provides that Eligible Employees will be entitled to a payment plan. However, to be eligible for the payment plan, Eligible Employees have to pay what they owe of the principal and interest of the contributions after the Retirement Plans of the PRTC return to the Commonwealth's Retirement System the contributions it has of each Eligible Employee. Thus, Act 234 requires the Retirement Plans to return to the Commonwealth's Retirement System the contributions it has of each Eligible Employee, after which it will be determined what each Eligible Employee owes in contributions and, then, the Eligible Employee will be entitled to obtain the payment plan provided for in Act 234 and reactivate his or her participation in the Commonwealth's Retirement System.

Without the transfer of assets from the Retirement Plans to the Commonwealth's Retirement System, consisting of Eligible Employees' accrued pension benefits, it cannot be determined what is the contribution amount that Each Eligible Employee will have to pay, and will prevent Eligible Employees from obtaining the payment plan they are entitled to receive under Act 234 to make such payment of owed contributions. This, in turn, will prevent Eligible Employees to reinstate their participation in the Commonwealth's Retirement System. Thus, without the transfer of assets from the Retirement Plans to the Retirement System, Eligible Employees cannot return to the Commonwealth's Retirement System

which, at the same time, **impedes the operation of Act 234**. For this reason also, Act 234 meets the "reference to" prong and is, therefore, preempted by ERISA.

(b)      *"Connection with" Prong:*

As mentioned above, a state law that does not refer to ERISA plans can also be preempted under Section 514(a) of ERISA if it has a "connection with" ERISA plans.  To determine whether the forbidden connection exists, it is necessary to look to the objectives of ERISA, <u>as well as to the nature of the effect of the state law on ERISA plans</u>. <u>Dillingham</u>, 519 U.S. at 325; <u>Pharmaceutical Care</u>, 429 F.3d at 302.  In the instant case there is a forbidden connection between Act 234 and ERISA plans because Act 234's provisions clash with and require the Retirement Plans to violate specific ERISA provisions. For this reason, ERISA also mandates the preemption of Act 234.

The essence of Act 234's connection with the Retirement Plans is that the Act requires the Retirement Plans to transfer to the Commonwealth's Retirement System, an ERISA-exempted, non-qualified governmental plan, that part of its assets that correspond to Eligible Employees' accrued pension benefits. Article 1 of Act 234, *supra.* This requirement operates regardless of whether Eligible Employees are in active employment or retired.  <u>Id</u>.  This transfer of assets that Act 234 requires would constitute a distribution of Eligible Employees' accrued pension benefits.[1]  However, the Retirement Plans have specific provisions that determine when and how a distribution of pension benefits can be made, and <u>none of them allow for a distribution of benefits while an employee is still in active employment</u>. Specifically, under the terms of the Salaried Retirement Plan and the Hourly Pension Plan, a distribution of benefits can only be made after the employee terminates employment and reaches normal, early or postponed retirement date, or, in the case of the

---

[1]ERISA does not allow a plan-to-plan transfer of assets when the transferor plan is an ERISA qualified plan and the transferee plan is a non-ERISA, non-qualified plan, such as the Retirement System. For this reason, the transfer of assets required by Act 234 would constitute a distribution of benefits.

CIVIL 09-1085CCC                          20

Hourly Pension Plan becomes disabled. In the case of the Lump Sum Plan, a distribution of benefits can only be made once or after the participant employee retires from active service or terminates employment with a vested interest under the Hourly Pension Plan or the Salaried Retirement Plan.

The Retirement Plans provisions are clear and they do not allow or provide for the transfer of pension benefits that Act 234 requires. If this transfer were to be made, the Retirement Plans' administrators would be violating the terms of the Plans, their own fiduciary duties[2], and, more importantly, another ERISA provision that requires that every employee benefit plan be <u>established</u> and <u>maintained</u> pursuant to a written instrument. See, Sections 402(a) and 404(a)(1)(D) of ERISA, 29 U.S.C. §§ 1102(a)(1) and 1104(1)(D). This particular ERISA provision mandates not only that a benefit plan has to be in writing, but also that the operation and administration of the plan, once it has been established, <u>must conform to the terms of such written instrument</u>.[3]

In addition to the above, some provisions of ERISA and of the U.S. Internal Revenue Code of 1986 ("IRC"), as amended, conflict with the requirements of Act 234.[4]  In particular, § 401(a)14 of the IRC requires a pension plan's trust, where the pension plan assets are held, to specify when a payment (i.e. distribution) of benefits will begin, including a provision that prohibits commencement of such distribution prior to the participant's termination of employment. As mentioned, Act 234 requires the transfer of benefits from the Retirement Plans to the Commonwealth's Retirement System regardless of whether the Eligible

_____

[2]Pursuant to Section 404(a)(1)(D) of ERISA, *supra*, fiduciaries have the duty of operating and administrating a benefit in the interest of all participants and beneficiaries, and in a way that conforms to the express terms of the written instrument that governs the plan. This duty prohibits a fiduciary to administer a plan contrary to the express terms of such plan.

[3] There are several policy reasons why ERISA requires that a plan be established and maintained pursuant to a written instrument. These reasons were identified in <u>Cefalu v. B.F. Goodrich Co</u>., 871 F.2d 1290, 1296 (9th Cir. 1989).

[4]The Hourly Pension Plan and the Salaried Retirement Plan are both subject to the provisions of the Internal Revenue Code that apply to retirement plans.

Employee is still an active employee of PRTC. Thus, Act 234 threatens the specific provisions and requirements of § 401(a)(14) of the IRC by requiring a different timing for a distribution or transfer of benefits that goes against what § 401(a)(14) provides and of the terms of the Retirement Plans themselves. This is particularly dangerous to the Retirement Plans and their participants and beneficiaries because a pension plan qualified under the IRC, such as the Salaried Plan and the Hourly Plan, has to comply with §401(a)14 of the IRC in order to remain qualified. This violation of the IRC would also constitute a violation of § 206(a) of ERISA, 29 U.S.C. § 1056(a) which mirrors the requirements of § 401(a)(14) of the IRC, but imposes those requirements on the pension plan itself, as opposed to the pension plan's trust.[5] The Retirement Plans are subject and governed by ERISA, and both the Hourly Plan and the Salaried Plan are also subject to and qualified under the IRC.

        Finally, Act 234's provisions would also place the Retirement Plans at risk of violating ERISA's anti-alienation provision. The anti-alienation provision prohibits the distribution of accrued pension benefits under a retirement plan, even with the consent of the participant, to someone other than the participant himself or a spouse or dependent that has been found to be an alternate payee, unless the distribution is a direct rollover to a qualified plan. See § 206(d) of ERISA, 29 U.S.C. § 1056(d); § 401(a)(13) of the IRC; see also § 402(c)(1),(5) and (8) of the IRC; and 26 C.F.R. 1.402(c)-2, Q&A 1 and 2. A distribution or transfer of pension benefits to the Commonwealth's Retirement System would clearly violate the anti-alienation provision because such System is not the participant or alternate payee, and because such distribution would not qualify as a direct rollover because the

_____

        [5]In general, both Section 206(a) of ERISA, *supra*, and Section 401(a)(14)) of the IRC provide that each pension plan must provide that, unless the participant elects to defer payment, the payment of benefits to the participant will begin no later than the 60th day after the close of the plan year in which the latest of the following events occur:  (i) the participant reaches the plan's normal retirement age or age 65, whichever is earlier; (ii) the tenth anniversary of the employee's participation in the plan is reaches; (iii) the participant terminates service with the employer.  See also 26 C.F.R. § 1.401(a)-14.

CIVIL 09-1085CCC                                    22

Commonwealth's Retirement System is an ERISA-exempted, non-qualified governmental plan.

Act 234's connection with the ERISA-governed Retirement Plans cannot be clearer and due to this connection, ERISA preempts Act 234.

Interveners argue that Act 234 does not regulate the Retirement Plans or impose requirements on them. They submit that Act 234 only establishes the conditions under which Eligible Employees, including Interveners, will be able to reinstate their participation in the Commonwealth's Retirement System and have their years of service in PRTC count for the calculation of their pension benefit in the Commonwealth's Retirement System.

In their argument, Interveners' refuse to recognize that Act 234 <u>clearly and expressly requires</u> the Retirement Plans to transfer plan assets corresponding to Eligible Employees' accrued benefits to the Commonwealth's Retirement System. As such, Act 234 does impose a requirement – and a serious one at that – on the Retirement Plans and, under Interveners' own analysis, the imposition of this requirement triggers and ultimately activates ERISA's preemption provision, causing Act 234 to be preempted by the federal statute.

**B.    Section 208 of ERISA does not save Act 234 from ERISA preemption:**

Interveners also argue that the "transfer" of assets required by Act 234 is akin to the type of asset transfer that occurs in the context of ERISA plan mergers or plan spin-offs. They submit that because ERISA contemplates, or rather regulates, in Section 208, 29 U.S.C. § 1058, the possibility of transferring plan assets from one plan to another, this is proof enough that the transfer required by Act 234 would be valid under ERISA and that no preemption problem would arise.

CIVIL 09-1085CCC                                23

> (a)   ERISA preempts laws that relate to employee benefit plans even when state laws are consistent with ERISA:
>
> Section 208 of ERISA provides:
>
> A pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan after the date of the enactment of this Act, unless each participant in the plan would (if the plan then terminated) receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer (if the plan had then terminated) . . .

Interveners' argument falls flat on its attempt to evade ERISA preemption.

The fact that ERISA contemplates, regulates, and even allows a plan-to-plan transfer of assets does not save a state law that requires such a transfer from ERISA preemption. The Supreme Court of the United States has decided on several occasions that, pursuant to Section 514(a), ERISA preempts state laws that relate to an employee benefit plan even when the state law is consistent with ERISA. District of Columbia v. Greater Washington Board of Trade, 506 U.S. 125, 129-140 (1992) (Holding that § 514(a) of ERISA pre-empts any state law that refers to or has a connection with covered benefit plans even if the law is consistent with ERISA's substantive requirements); Ingersoll-Rand Co. v. Perry, 498 U.S. 133, 140 (1990) ("Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements."); Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985); see also Hampers v. W.R. Grace, 202 F.3d 44, 49 (1st Cir. 2000).  Thus, if the state law refers to or has a forbidden connection with the employee benefit plan, the same will be preempted, regardless of whether or not the state law's provisions conflict with ERISA provisions. Since Act 234 both refers to and has a connection with the ERISA-covered Retirement Plans, Act 234 is preempted.

CIVIL 09-1085CCC                              24

     (b)    <u>Act 234 conflicts with Section 208</u>:

Section 208 of ERISA may allow transfers of assets between pension plans, if certain requirements are met, but it **does not obligate** a plan sponsor to perform such asset transfer. On the contrary, as with other matters related to the establishment and design of an ERISA plan, it is the plan sponsor who decides whether or not a transfer of assets should be made. <u>Curtis-Wright Corp. v. Schoonejongen</u>, 514 U.S. 73, 131 L. Ed. 2d 94, 115 S.Ct. 1223 (1995) (Plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.); <u>Lockheed Corporation v. Spink</u>, 517 U.S. 882, 889-890 (1996) (Extends the rule in <u>Curtis-Wright Corp</u>, *supra*, to pension plans.  Thus, plan sponsors are generally free under ERISA, for any reason, to adopt, modify, or terminate pension plans).

Section 208 only imposes a condition or requirement on the retirement plan and its sponsor that must be met to make a valid and ERISA compliant pension plan to pension plan transfer of assets.

In the instant case, we have a state law, Act 234, that obligates the ERISA-covered qualified Retirement Plans to transfer assets (consisting of benefits accrued by Eligible Employees) to the Commonwealth's Retirement System, a governmental, ERISA-exempted, non-qualified retirement plan. **Such state law is in clear conflict with ERISA, since it takes away the power that ERISA grants plan sponsors to decide if and when, in the course of maintaining and operating a plan, it is necessary or beneficial to perform an asset transfer.** The conflict that Act 234 creates also demonstrates the forbidden connection it has with an ERISA plan which further supports our finding that Act 234 is preempted under Section 514(a) of ERISA.

CIVIL 09-1085CCC                                    25

    (c)    <u>Section 208 of ERISA is not applicable to the transfer of assets that Act 234 requires</u>:

Moreover, and perhaps more importantly, Section 208 of ERISA does not contemplate and is not applicable to the transfer of assets that Act 234 requires because: (1) Section 208 does not apply to governmental plans; and (2) Section 208 requires that both plans, the transferor and the transferee, be qualified plans. In this case, the Commonwealth's Retirement System is a governmental non-qualified plan, exempted from the provisions of ERISA and from the provision of the Internal Revenue Code that apply to qualified retirement plans. Thus, Section 208 does not apply to the plan-to-plan transfer required by Act 234 and cannot save Act 234 from preemption.

ERISA Section 208, 29 U.S.C. § 1058, provides that a pension plan may not merge or consolidate with, or transfer its assets or liabilities to, any other plan unless each participant in the plan would receive a benefit immediately after the merger, consolidation, or transfer which is equal to or greater than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer. Accordingly, to meet such ERISA requirements whenever a transfer of assets or liabilities is made in a direct trust to trust transfer from one plan to another the participant may not receive a benefit that is less than the benefit held in the prior plan.

Sections 401(a)(12) and 414(l) of the IRC parallel § 208 of ERISA. These sections provide that a trust which forms part of a pension plan will not constitute a qualified trust under Section 401 of the IRC unless each participant receives benefits that are equal to or greater than the benefits a participant would receive on a termination basis immediately before the merger, consolidation or "transfer of assets." Sections 401(a)(12) and 414(l) of the IRC. The U.S. Secretary of the Treasury (the "Secretary") was given the authority to enforce these IRC and ERISA provisions in order to avoid having two separate

governmental departments acting over parallel sections.[6] Thus, the Treasury Regulations promulgated to implement sections 401(a)(12) and 414(l) of the IRC, found in 26 C.F.R. 1.414(l)-1, are also applicable to Section 208 of ERISA.

The Treasury Regulations define the terms "merger" or "consolidation" as the combination of two or more plans into a single plan.  26 C.F.R. § 1.414(l)-1(b)(2). Meanwhile, a "transfer of assets or liabilities" is said to occur when there is a diminution of assets or liabilities with respect to one plan and the acquisition of these assets or the assumption of these liabilities by another plan.  26 C.F.R. § 1.414(l)-1(b)(3).[7]

As indicated above, Section 208 of ERISA does not apply to the transfer of assets required by Act 234.  Neither do Sections 401(a)(12) nor 414(l) of the IRC and the Treasury Regulations that implement both, the IRC sections and Section 208 of ERISA. There are two reasons why they are inapplicable.  The first one is because Section 208 of ERISA and Sections 401(a)(12) and 414(l) of the IRC do not apply to a governmental plan such as the Commonwealth's Retirement System.  Section 208 of ERISA is found in Part 2 of Title I of ERISA, 29 U.S.C.A. § 201 et seq.  Section 201 of ERISA, regarding coverage of part 2 of ERISA, provides that "This part shall apply to any employee benefit plan described in section 4(a) (and not exempted under section 4(b) [of ERISA] . . ." In turn, section 4(b) of ERISA, 29 U.S.C.A. § 1004(b), provides that "The provisions of this title shall not apply to any employee benefit plan if - (1) such plan is a governmental plan . . ."  (Emphasis supplied). Sections 401(a)(12) and 414(l) of the IRC also exempts governmental plans from

---

[6]Under Reorganization Plan No. 4 of 1978, the President transferred the Secretary of Labor's authority with respect to Section 208 of ERISA to the Secretary of the Treasury. 14 Weekly Compilation of Presidential Documents 42 (Oct. 14, 1978).  See also Koch Industries, Inc. v. Sun Company, Inc., 918 F.2d 1203, 1206 (5th Cir. 1990).

[7]The instant case does not involve a "merger" or "consolidation" since there is no combination of plans. It is also not a transfer of assets within the meaning of Section 414(l) of the IRC and 208 of ERISA, since a transfer of assets is considered to be a combination of separate mergers and spinoffs, none of which would occur in the transaction that Act 234 requires.  26 C.F.R. § 1.414(l)-1(o).

its application.  See Section 411(e)(1) of the IRC.  As specifically stated in the Treasury Regulation:

>     (a)     In general.

>         (1) *Scope of the regulations*.  Sections 401(a)(12) and 414(l) apply only to plans to which section 411 applies without regard to section 411(e)(2).  Thus, for example, these sections do not apply to a governmental plan . . .

26 C.F.R. § 1.414(l)-1(a)(1).  (Emphasis supplied).  See also 44 FR No. 161, p. 48191 ("The final regulations also make it clear that sections 401(a)(12) and 414(l) do not apply to a governmental plan. . .").

Thus, pursuant to the above ERISA and IRC provisions, and the Treasury Regulation, neither Section 208 of ERISA nor Sections 401(a)(12) and 414(l) of the IRC apply to governmental plans. Because, as stipulated by the parties, the Commonwealth's Retirement System is a governmental plan, Section 208 of ERISA is not in any way applicable to, and does not contemplate or even allows the transfer of assets that Act 234 requires.

Furthermore, Section 208 of ERISA (as well as sections 401(a)(12) and 414(l) of the IRC) does not apply or permit the transfer of assets that Act 234 requires because the transfer of assets regulated in the cited statutes' sections must be between qualified pension plans subject to ERISA, the IRC or both. See, King v. National Human Resource Committee, Inc., 218 F.3d 719, 723 (7th Cir. 2000) (Spin-offs and transfers of assets from one qualified plan to another are allowed under both the Internal Revenue Code and ERISA); and Cesemore v. Alliance Holdings, Inc., 770 F. Supp. 2d 950, pp. 960-961 (WDWI 2011) ("Spinoffs and other transfers of assets from one qualified plan to another are governed by Sec. 208 of ERISA").  Otherwise, governmental plans and church plans, both of which are non-qualified plans exempted from ERISA and the IRC, would not be specifically exempted from the application of Section 208 of ERISA and section 401(a)(12) and 414(l) of the IRC.

Because the transfer of assets allowed and regulated by ERISA and the IRC must be between qualified plans, a transfer of assets from a qualified plan to a non-qualified,

ERISA and/or IRC exempted plan, such as the Commonwealth's Retirement System, is not permitted under ERISA. ERISA cannot and does not allow a transfer from a qualified plan to a non-qualified, ERISA-exempted plan because permitting such a transfer would divest the assets transferred, consisting of benefits accrued by ERISA plan participants in the qualified plans, from the protections of ERISA. After all, an ERISA exempted plan, such as a governmental plan, is not governed and does not have to comply with ERISA.  Section 208 of ERISA (and their counterparts in Sections 401(a)(12) and 414(l) of the IRC), by governing transfers of assets from a qualified plan to another qualified plan, in essence guarantee the continuance of the ERISA regime. As stated by the U.S. Supreme Court in <u>Beck v. Pace International Union</u>, 551 U.S. 96 (2007), a case where the Court refers to Section 208 of ERISA, 29 U.S.C. § 1058, as "the general merger provision"[8] and differentiates mergers between qualified plans from plan terminations:

> Merger is fundamentally different [from plan termination]:  It represents a *continuation* rather than a *cessation* of the ERISA regime . . .  [A]ssets would remain *within* ERISA's purview, the PBGC would maintain responsibility for them . . . Finally, plan participants and beneficiaries would have their recourse not through state-contract law, but through the ERISA system, just as they had prior to the merger.

<u>Id</u>. at pp. 106-107.  (Emphasis in original).

The Internal Revenue Service, in Revenue Ruling 94-76, as amplified by Revenue Ruling 2002-42, reaches the same conclusion:

> Under Section 414(l) the transfer of certain assets and liabilities from Plan A to Plan B is considered a spinoff of those assets and liabilities from Plan A and the merger of those assets and liabilities with the assets and liabilities of Plan B. The merged entity consists of both the assets and liabilities transferred from Plan A and the assets and liabilities of Plan B. A merger of assets and liabilities of a <u>qualified</u> money purchase pension plan with the assets and liabilities of a <u>qualified</u> profit-sharing plan does not divest the assets and liabilities of the money purchase pension plan of their attributes as pension plan assets and liabilities. Therefore, to satisfy Section 401(a), the assets and liabilities transferred from Plan A to Plan B must remain subject to the

---

[8]A transfer of assets under Section 208 of ERISA and Sections 401(a)(12) and 414(l) of the IRC consists of a combination of separate mergers and spinoffs.  <u>See</u> 26 C.F.R. § 414(l)-1(o).

> restriction on distributions applicable to a qualified money purchase pension plan. In order to remain qualified, any plan provision applicable to the accrued benefits derived from Plan A must not permit distributions prior to retirement, death, disability, severance of employment, or termination of the plan.

Rev. Rul. 94-76.  (Emphasis supplied).  See also, generally, Perdue, Pamela D., *Qualified Pension and Profit-Sharing Plans 2012/2013, ¶2.04[9][i], pp. 2-92-2-93 (Valhalla, NY, Thomson Reuters, 2012).*

In sum, Section 208 of ERISA and Sections 401(a)(12) and 414(l) of the IRC are only applicable to transfers of assets between qualified pension plans and exclude from its application non-qualified, ERISA-exempted governmental plans such as the Commonwealth's Retirement System. By the same token, and contrary to Interveners' allegations, these ERISA and IRC sections do not contemplate and do not permit a transfer between a qualified pension plan and a non-qualified governmental plan. Thus, if a "transfer of assets" of a qualified plan to a non-qualified governmental plan were to be made, like the transfer of assets required by Act 234, the disbursement of the plan assets held in the qualified plan sent and paid to the non-qualified plan would constitute a distribution of benefits and not a transfer of assets within the meaning of Section 208 of ERISA and sections 401(a)(12) and 414(l) of the IRC. More importantly, since Section 208 of ERISA does not contemplate or permit this kind of transfer of assets, the provisions in Act 234 requiring a transfer of assets between the Retirement Plans (all of which are qualified plans) and the Commonwealth's Retirement System (a non-qualified, governmental plan) are in direct conflict with ERISA and, for that reason, ERISA preempts Act 234.

## IV.    CONCLUSION

Act 234 specifically requires the ERISA-covered Retirement Plans to disburse and pay plan assets corresponding to benefits accrued by Eligible Employees to the Commonwealth's Retirement System. This particular Act 234 requirement directly relates to ERISA-governed employee benefit plans - the Retirement Plans - and subjects them to

CIVIL 09-1085CCC                                    30

this state law in violation of ERISA's preemption provision and Congress's clear intent to subject private employee benefit plans solely to federal regulation to the exclusion of state law. For this reason and the legal analysis contained in the present Opinion and Order, this Court FINDS Act 234 to be preempted by ERISA as enacted and as applied against plaintiffs, and GRANTS the Motions for Summary Judgment filed by plaintiffs (**docket entry 101**) and defendants (**docket entry 105**).  A separate declaratory judgment will be entered accordingly.

SO ORDERED.

At San Juan, Puerto Rico, on April 4, 2013.

S/CARMEN CONSUELO CEREZO
United States District Judge